UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00730-GNS

JOSIAH CURRY and HOLLY CURRY,
Individually and on Behalf of their Minor children,
V.C., R.C., Ad.C., C.C., H.C., and An.C.                                      PLAINTIFFS

v.

KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES, et al.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 4). For the reasons set forth below, Defendants' motion is **GRANTED**.

### I.     BACKGROUND

Holly Curry ("Holly") alleges that she left her six children alone in her vehicle for about ten minutes on March 30, 2017.[1] (Compl. ¶¶ 45-47). When she returned to her vehicle, police officers approached and reprimanded Holly for her conduct. (Compl. ¶ 53). One officer subsequently filed a JC-3 form with the Kentucky Department for Community Based Services, Division of Protection and Permanency ("Department"), and, the next day, Jeanetta Childress ("Childress")—a social worker for the Department—visited the Curry residence to determine whether Holly or Josiah had been neglecting their children.[2] (Compl. ¶¶ 72-74, 76-79). Initially,

---

[1] Josiah Curry ("Josiah") is Holly's husband and the father of her children. (Compl. ¶¶ 5-10, DN 1). The Court will refer to Holly, Josiah, and their six children collectively as "the Currys" or "Plaintiffs."

[2] Law enforcement officers in Kentucky are required to file JC-3 forms in response to instances of supposed abuse. KRS 209A.120. "If the JC-3 form . . . includes information of known or

1

Holly refused to let Childress inside,[3] but Childress eventually gained entry by enlisting the help of Hardin County Deputy Sheriff Michael Furnish ("Furnish"), who told Holly that he would remove her children from her home if she did not let Childress enter. (Compl. ¶¶ 91-93, 96, 104-08, 113, 121-23, 133-36). Once inside, Childress and Furnish strip-searched the Curry children and collected personal information about them.[4] (Compl. ¶¶ 155-238). Though the Department found no evidence of abuse, the Department still possesses the personal information about the Currys that Childress gathered through her investigation. (Compl. ¶ 234-38).

Plaintiffs subsequently brought suit against Defendants, arguing that Defendants used unconstitutional procedures when investigating the Currys' supposed instance of child abuse.[5] (Compl. ¶¶ 1-3). Pertinently, Plaintiffs claim that 922 KAR 1:330 § 3(21)—a regulation that the Secretary issued and that Childress utilized to access the Currys' home—is unconstitutional because it allows social workers to subvert the Fourth Amendment's warrant requirement and instead "request assistance . . . from law enforcement" to gain entry into a home whenever the "parent . . . of [the] child refuses" to let the social worker in, regardless whether the social worker or child is in danger. (Compl. ¶¶ 270-71). As a remedy, Plaintiffs seek a judgment against the Cabinet, Department, and Secretary, declaring 922 KAR 1:330.3(21) unconstitutional and requiring expunction of any personal information that the Department possesses about the Currys as a result of Childress' investigation. (Compl. ¶¶ 272, 276).

---

suspected child abuse . . . the form shall be forwarded to" the Kentucky Cabinet for Health and Family Services ("the Cabinet"), an agency that encompasses the Department. *See id.*

[3] Childress did not have a warrant to enter the Currys' home. (Compl. ¶¶ 95-96).

[4] The Complaint alleges that Childress gathered information about the Curry family's religious beliefs and medical histories. (Compl. ¶¶ 206-18).

[5] Though the Complaint names six defendants, the claims at issue in the pending motion are against only the Cabinet, the Department, and the Cabinet's Secretary, Vickie Glisson ("Secretary"). The Court will therefore use the term "Defendants" in this opinion to refer to those three parties.

Defendants moved to dismiss Plaintiffs' claims on the ground that this Court lacks subject matter jurisdiction to hear them. (Defs.' Mem. Supp. Mot. Dismiss, DN 4-1 [hereinafter Defs.' Mot. Dismiss]). Plaintiffs submitted a response to Defendants' motion. (Pls.' Mem. Law Opp'n Mot. Dismiss 10, DN 2-10 [hereinafter Pls.' Resp.]). At this juncture, the parties have fully briefed Defendants' Motion to Dismiss, and that motion is therefore ripe for adjudication.

## II.  JURISDICTION

This action arises under the laws of the United States, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III.  STANDARD OF REVIEW

The Court lacks subject matter jurisdiction over a claim (and the claim is subject to dismissal) if the plaintiff fails to show that he has standing to bring it. Fed. R. Civ. P. 12(b)(1); *Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the court must find that the complaint plausibly shows that: (1) the plaintiff has or imminently will suffer an injury, (2) the defendant caused the injury, and (3) a judicial decision would redress the injury.[6] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *White*, 601 F.3d at 551-52 (citations omitted); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "General factual allegations of injury may suffice to demonstrate standing," but "standing cannot be inferred . . . from averments"—the facts establishing standing must affirmatively appear in the pleadings. *White*, 601 F.3d at 551 (citation omitted).

---

[6] As the Sixth Circuit has explained, Rule 12(b)(1) and Rule 12(b)(6) "motions to dismiss on the pleadings . . . are often confused with each other." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). But when, as here, Defendants' motion to dismiss under Rule 12(b)(1) attacks the facial validity of the Complaint during the pleading phase, the applicable standard of review is the same as the standard of review used for motions to dismiss brought under Rule 12(b)(6). *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010).

When the plaintiff relies on an allegation of future harm to establish the injury-in-fact element of the standing requirement, he must plead facts sufficient to demonstrate that the threatened injury is "certainly impending . . . ." *White*, 601 F.3d at 553 (citing *Rosen v. Tenn. Comm'r of Fin. & Admin.,* 288 F.3d 918, 929 (6th Cir. 2002))). A threatened injury is not "certainly impending" if it is contingent on the occurrence of events, the incidence of which "veer[] 'into the area of speculation and conjecture.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)).

## IV. DISCUSSION

To begin with, the Court lacks subject matter jurisdiction over Plaintiffs' claims against the Cabinet—a state agency—and the Department, a division thereof, because both of those parties are entitled to Eleventh Amendment immunity. As this Court has recently explained: "[u]nder the Eleventh Amendment to the United States Constitution, a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has expressly abrogated states' immunity" via statute. *See Fleet v. Ky. Cabinet for Health & Family Servs.*, No. 3:15-CV-00476-JHM, 2016 WL 1241540, at *3 (W.D. Ky. Mar. 28, 2016) (internal footnote omitted) (citations omitted)). Kentucky has not waived its immunity from Plaintiffs' claims, and Congress has not abrogated that immunity; thus, Plaintiffs' claims against the Cabinet and Department cannot proceed. *See id.*

A different result attaches with respect to the Secretary. Plaintiffs may seek declaratory relief against the Secretary because the Eleventh Amendment does *not* prevent a litigant from seeking "prospective non-monetary relief against a state official in her official capacity to *prevent future* [or continuing] constitutional . . . violations." *Fleet*, 2016 WL 1241540, at *4

(emphasis added); *see also Ex parte Young*, 209 U.S. 123 (1908); *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993).

Nonetheless, Plaintiffs' claims against the Secretary will only survive Defendants' motion to dismiss if Plaintiffs' pleadings contain facts sufficient to establish that they have standing to assert them. *White*, 601 F.3d at 551-52 (citations omitted); *Cohn v. Brown*, 161 F. App'x 450, 454 (6th Cir. 2005) (citation omitted). To have standing to seek a judgment declaring a regulation unconstitutional, Plaintiffs must plausibly allege, *inter alia*, that they: (1) presently suffer adverse effects or an ongoing injury as a result of Childress' utilization of the regulation, or (2) face "'a 'real and immediate threat of future injury'"—i.e., state officials are likely to again utilize 922 KAR 1:330 § 3(21) as a basis for entering their home without a warrant. *See Campbell v. Univ. of Louisville*, 862 F. Supp. 2d 578, 584 (W.D. Ky. 2012) (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102-03 (1983) (citation omitted))).

Plaintiffs argue that they have standing to seek declaratory relief against the Secretary because they have a continuing legal interest in expunging the portions of the Department's records that contain personal information about them. (Pls.' Resp. 2-10). Stated differently, Plaintiffs assert that they have standing to challenge 922 KAR 1:330.3(21) because they presently suffer from an ongoing injury—the Department's retention of records containing their personal information—as a result of the actions Childress took pursuant to that regulation.

Plaintiffs' contention is incorrect, and none of the authority they cite supports their argument.[7] Rather, case law indicates that a plaintiff *does not* have standing to challenge the

---

[7] For example, Plaintiffs cite *United States v. Field*, 756 F.3d 911 (6th Cir. 2014), for the proposition that federal courts have ancillary jurisdiction to consider motions seeking expunction of criminal records as long as the motion establishes that the defendant's unconstitutional conduct gave rise to the record in the first place. That holding is inapposite. *Field* does not hold that a court has jurisdiction over a claim seeking expunction of records, regardless whether the

5

constitutionality of a policy simply because the defendant obtained and maintains personal information about her while acting pursuant to that policy. *See, e.g.*, *Dorn v. Mich. Dep't of Corr.*, No. 1:15-CV-359, 2017 WL 2436997, at *8 (W.D. Mich. June 6, 2017) (plaintiff's request for expunction of prison records did not give him standing to challenge the legality of a prison policy mentioned in his prison records). In other words, a plaintiff must have standing to challenge a regulation *and* standing to seek expunction of records obtained pursuant to that regulation. *See Cohn*, 161 F. App'x at 454 (noting that "plaintiff must have standing for *each* claim he asserts." (citation omitted) (emphasis in original)); *Robinson v. Blank*, No. 11 CIV. 2480 PAC DF, 2013 WL 2156040, at *15 (S.D.N.Y. May 20, 2013) (analyzing issue whether plaintiff had standing to challenge regulation *separately* from issue whether plaintiff had standing to seek expunction of personal information that defendant collected pursuant to that policy).

Given that Plaintiffs' "continuing injury" argument fails, they can only establish standing to challenge 922 KAR 1:330 § 3(21) by alleging facts showing that a future injury at the hands of state officials is certainly impending. *White*, 601 F.3d at 553. In other words, to survive Defendants' motion Plaintiffs must present facts sufficient to permit the reasonable inference that there is a high likelihood that: (1) state officials will use the regulation to violate their rights in

---

plaintiff has standing to bring it. Rather, it holds that, in the absence of federal question, diversity, or supplemental jurisdiction, a court may have *ancillary* jurisdiction to hear motions seeking expunction of records in some cases. *Id.* at 915-16. That said, the party seeking expunction must *still* establish that he has standing to seek that remedy—i.e., he must show, *inter alia*, that the defendant's retention of records about him has caused or will cause him to suffer an injury-in-fact. *See, e.g.*, *Tabbaa v. Chertoff*, No. 05-CV-582S, 2005 WL 3531828, at *9 (W.D.N.Y. Dec. 22, 2005) (concluding that plaintiffs had standing to seek expunction of records *because* it was likely that plaintiffs would be subjected to future injury as a result of defendant's maintenance of said records). Thus, though the Court may have upplemental jurisdiction over Plaintiffs' claim for expunction, Plaintiffs do not necessarily have standing to assert that claim.

the future, and (2) they will be harmed by the Department's retention of records containing their personal information. *See Barber v. Miller*, 809 F.3d 840, 848 (6th Cir. 2015) (holding that plaintiff lacked standing to seek a judgment declaring a state law unconstitutional because plaintiff failed to allege that he suffered a "threat of harm from the challenged statute greater than any other" person in the state); *Tabbaa*, 2005 WL 3531828, at *9. Plaintiffs have failed to meet this burden. They allege neither that state officials are likely to once again enter their home without a warrant, nor that the Department's maintenance of records containing information about them will harm them in the future. Thus, Plaintiffs have failed to allege facts sufficient to establish that they will suffer an injury-in-fact as a result of the Secretary's conduct and therefore lack standing to seek an order declaring 922 KAR 1:330 § 3(21) unconstitutional and requiring the Department to expunge their records. *See White*, 601 F.3d at 551-52; *see also Barber*, 809 F.3d at 848; *Tabbaa*, 2005 WL 3531828, at *9. Without establishing jurisdiction over the declaration of the regulation's unconstitutionality, the Court declines tot exercise supplemental jurisdiction over Plaintiffs' request for expungement.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 4) is **GRANTED**, and Plaintiffs' claims against the Department, the Cabinet, and the Secretary are **DISMISSED WITH PREJUDICE**. Plaintiffs' claims against Childress, Furnish, and Hardin County Sheriff John Ward remain.

**Greg N. Stivers, Judge**
**United States District Court**
March 14, 2018

cc: counsel of record